215 B.R. 646 (1998)
In re Thomas Peter PAPPAS, Debtor.
Thomas Peter PAPPAS, Appellant,
v.
INTERNATIONAL MINERALS AND RESOURCES, S.A. and International Shipping Company, S.A., Appellees.
BAP No. 97-50009.
United States Bankruptcy Appellate Panel of the Second Circuit.
January 5, 1998.
*647 Thomas C. Boscarino, Boatman, Boscarino & Grasso, Glastonbury, CT, for Debtor-Appellant.
Elliot Silverman, Robert Gold, McDermott, Will & Emery, New York City, Levy & Droney, P.C., Farmington, CT, (Ross Fingold, of counsel), for Appellees.
Before: TINA L. BROZMAN, MICHAEL J. KAPLAN, and JOHN C. NINFO, II, Bankruptcy Judges.
MICHAEL J. KAPLAN, Bankruptcy Judge.
This is the Debtor's appeal from an order extending time for a creditor to file a complaint objecting to the discharge of a debt. The Debtor argues that as to this particular creditor, there was no proper motion nor was there proper "cause" for an extension. Both of those arguments had been raised before and were rejected by the bankruptcy court. Because the Debtor did not seek a stay of the extension order pending appeal, and because a complaint was in fact filed within the extended time, the Panel dismisses this appeal as moot.

FACTS
Appellant, Thomas Peter Pappas ("Debtor" or "Appellant") filed a voluntary chapter 7 petition on September 18, 1996. Creditors were duly notified that the date set for the first meeting of creditors (the "§ 341 meeting") was November 21, 1996. Creditors also were notified that the deadline for filing complaints objecting to discharge ("§ 727 complaints") and the dischargeability of particular debts ("§ 523 complaints") was January 21, 1997, 60 days from the date set for the first § 341 meeting. See Fed. R. Bankr.P. 4004(a) and 4007(c). The § 341 meeting was convened on November 21, 1996, but was adjourned to January 10, 1997, and then again to February 21, 1997.
On January 15, 1997, one of Appellant's creditors, the Federal Deposit Insurance Corporation ("FDIC"), made a motion "on behalf of all creditors" to extend the time to file §§ 727 and 523 complaints, and to extend the time to object to exemptions of the Debtor ("FDIC Motion"). Appendix at 12. The FDIC requested an additional six months from the original bar date, or thirty days from the conclusion of the § 341 meeting within which to file complaints. Before the expiration of the original January 21, 1997 deadline two other creditors, Bankers Trust and Bank of New York, filed "responses" to the FDIC Motion seeking to join in that motion, and setting forth facts which, they argued, would support a finding that "cause" existed to extend the time to file complaints. Appendix at 22, 26. Bankers Trust, Bank of New York, and the FDIC pointed to: (1) the complexity of the Debtor's financial affairs; and (2) the Debtor's failure to provide creditors with sufficient information at the § 341 meeting upon which to decide whether or not §§ 523 and 727 complaints would be appropriate, as reasons why the deadline for filing complaints should be extended. Appellees, International Minerals and Resources, S.A. and International Shipping Company, S.A. (together "International") did not file written responses joining in the FDIC Motion, but joined orally on the record at a hearing which was held on February 11 and 13, 1997.
The Debtor, in his response to the FDIC Motion, objected to the Motion's broad application *648 to "all creditors" and its application to International in particular. Appendix at 40. Also, assuming that International was found to be properly joined, the Debtor argued that "cause" did not exist to extend the time with respect to International; the reason being that prior to the Debtor's bankruptcy filing, International and Pappas were engaged in litigation for approximately ten years involving the very same transactions which might underlie any § 523 complaint filed by International. For this reason, the Debtor argued, International had available to it, prior to the expiration of the deadline for filing complaints, all the information necessary to form the basis of a complaint, and the "cause" for extension cited by the other movants could not bespeak "cause" for extension as to International.
Indeed, International and Pappas were very well acquainted. In 1987, International had brought an action against Pappas and other defendants in the United States District Court for the Southern District of New York alleging tortious interference with contract. In 1995, a jury returned a verdict for International against some of the defendants, but found that Pappas was not liable. International appealed to the Second Circuit, which, in 1996, affirmed against the defendants already found liable, but reversed the finding that Pappas and another defendant were not liable and remanded for a new trial on liability as to those two and damages with respect to all defendants found liable. See International v. Pappas et al, 96 F.3d 586 (2d Cir.1996). Pappas filed a petition for rehearing with the Second Circuit which was denied. Pappas also filed a chapter 7 petition which prevented a retrial.
Approximately four months into the bankruptcy case, on January 21, 1997 (which coincidentally was the original last date to file a nondischargeability complaint), International sought relief from the automatic stay in the bankruptcy court so that it could proceed with the retrial in District Court. In the lift stay motion International argued that because Pappas' debt to them involved "willful and malicious injury" under 11 U.S.C. § 523(a)(6), and is therefore nondischargeable, they should be able to proceed in order to liquidate their claim against Pappas, without seeking to enforce any ensuing judgment. International also advanced the argument that "no additional discovery proceedings" would be required if the case were retried. Appendix at 57. Opposition to the lift stay motion has prevented it from being submitted to the trial court for decision as of the time of submission of this appeal for decision.
The Debtor argued that International had not properly joined in the motion, and also that: (1) the existence of protracted litigation between the parties; (2) International's own recitation in the lift stay motion that Pappas' debt to them was nondischargeable; and (3) the fact that International did not need any additional documentation from Pappas in order to conduct a retrial, are factors which should weigh against granting International an extension of time to file a complaint in the Debtor's bankruptcy case.
For its own part, International explains to this Panel that it was never uncertain of the facts, but only as to the best procedure in light of the fact that Pappas was only one of several defendants who had a right to trial by jury. It wished to proceed to trial as to all pertinent defendants in the District Court, then file a § 523 complaint in Pappas' bankruptcy case if it prevailed against Pappas, and rely on the preclusive effect of the District Court trial.
At the conclusion of the February 13, 1997 hearing on the FDIC Motion, the bankruptcy court allowed International, the Bank of New York, and Bankers Trust to be joined in the FDIC Motion and extended the time for those creditors to file § 523 complaints until July 16, 1997. The bankruptcy court also extended the time to file § 727 complaints for all creditors.[1] As to § 523 complaints (and perhaps § 727 complaints as well), the *649 court ruled from the bench that whenever a § 341 meeting has not concluded, "cause" always exists to extend the time to file complaints, regardless of other facts and circumstances, such as prior dealings between the parties.[2] Appendix at 137. An order was entered on this ruling on March 7, 1997.
Although the Debtor sought and obtained from the Bankruptcy Appellate Panel an Order Granting Leave to Appeal the Interlocutory Order, see In re Thomas Peter Pappas, 207 B.R. 379 (2d Cir. BAP 1997), he did not seek a stay of the bankruptcy court's order and International did, in fact, file a § 523 complaint (the "Complaint") on July 16, 1997, the last date of the extended time allowed by the bankruptcy court.
The Debtor appeals only the bankruptcy court's rulings with respect to International.

DISCUSSION

1. The Standard for Mootness
At oral argument, the Panel sua sponte raised question as to whether the appeal might be moot, and later directed the submission of further briefs in that regard. Based on those briefs, it appears to be well-settled in the Second Circuit that a determination of mootness in a bankruptcy matter involves equitable considerations, such that an appeal is moot when "even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable." South Street Seaport Ltd. Partnership v. Burger Boys, Inc. (In re Burger Boys, Inc.), 94 F.3d 755, 759-60 (2d Cir. 1996); Resolution Trust Corp. v. Best Products (In re Best Products), 68 F.3d 26, 29-30 (2d Cir.1995); Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.), 10 F.3d 944, 949-50 (2d Cir.1993); In re Chateaugay Corp., 988 F.2d 322, 325 (2d Cir.1993).[3]

2. Any Error Here Was Not Preserved for Review
As a different Panel of the Bankruptcy Appellate Panel recognized in this same case, the Rule 4007 Order appealed from was an interlocutory order. See Pappas, 207 B.R. at 381. Because events will not always moot an interlocutory order, it is obvious that one need not always seek a stay under Rule 8005 in order that the correctness thereof be preserved for review. But a proper effort[4] to obtain a stay clearly should be contemplated whether or not leave to appeal the interlocutory order was sought and obtained. This is so because in a different context the Ninth Circuit has held that where "[a]ppellants neither sought nor obtained stays of the district court's interlocutory orders" a subsequent appeal of those interlocutory orders as part of a final judgment would be dismissed as moot where *650 "such a comprehensive change in circumstances [occurred which would] render it inequitable for this court to consider the merits of the appeal." United States v. Alder Creek Water Co., 823 F.2d 343, 345 (9th Cir.1987) (citing Algeran, Inc. v. Advance Ross Corp., 759 F.2d 1421, 1423 (9th Cir.1985)). There should be greater focus on this question where, as here, an appellant was granted leave to appeal the interlocutory or interim order, for it has been said that where said leave has been granted, the applicable mootness analysis is the same as that which applies to final orders. See, e.g., Mellon Bank v. Delaware & Hudson Railway (In re Delaware & Hudson Railway), 129 B.R. 388 (D.Del.1991) (characterizing an appealed order as interlocutory and dismissing it as moot where no stay was obtained pending appeal); Thompkins v. Frey (In re Bel Air Assoc.), 31 B.R. 133 (W.D.Okla.1981).
Had the Debtor sought and obtained a stay pending appeal the status quo as of the date the extension motion was heard would have been maintained and the subsequent filing of the § 523 complaint could not have been argued to have been timely filed on the basis of the extension order.
In light of the filing of the § 523 complaint within the extended time, the Appellant cannot equitably get the relief he prays for, i.e., a declaration that the § 523 complaint is "time-barred." Appellant's Brief at 24. This is so because even if we were to conclude that the bankruptcy court's order extending the time to file was erroneous, that order was not stayed pending appeal, and so the Appellee was clearly entitled to rely on it, and did so rely, and did file a complaint on the last day of the extended period.[5] To declare that that was futile would be clearly inequitable because that would leave the Appellee with no remedy today other than further appeal on the narrow issue raised by Appellant, even though it would have had various other remedies had it lost rather than won the order under appeal, on the day that the original motion was argued.
Those other remedies flow from the events; the chronology, again, is this: The motion to extend the time was timely filed on January 15, 1997, before the January 21, 1997 deadline, but was not heard until February 11 and 13, 1997, after the time had expired. It is critical to this analysis that at no time did the Debtor argue to the bankruptcy court that the FDIC Motion was itself moot on February 11 for failure to get an interim extension pending hearing on that original Motion. If the Debtor had opposed the FDIC Motion on that ground, one matter (at least) that might be addressed on appeal now is whether an interim extension was or was not necessary. Rather, all parties and the bankruptcy court seemed to presume that something akin to a de facto extension was in effect.[6] Under those circumstances, had the Debtor prevailed at argument before the bankruptcy court, the constructive or de facto extension would likely have been further extended for at least a few hours[7] to permit International to consider Rule 11 and *651 decide whether to prepare and to file an immediate § 523 complaint.
If the Panel were to reverse the bankruptcy court today on the merits, it would have to remand in some fashion contrived to put the creditor in a similar posture. The Panel itself would have to grant a retroactive extension until the bankruptcy court conducts a rehearing and rules on it. The Panel also would have to advise that in the event of subsequent denial of the extension, the Appellee is free to: (1) ask the bankruptcy court for a further brief extension to refile the complaint it already filed in reliance on the earlier order; and/or (2) seek appeal of the denial and seek a stay of the expiration of the Panel's stay, pending further appeal. In sum, a remand would be terribly contrived, and, in this Panel's view, "inequitable" under the Second Circuit caselaw discussed above.
The Appeal is dismissed.
SO ORDERED.
NOTES
[1] The Debtor does not specifically raise issue with the court's ruling in this regard. In making its ruling on extensions to file § 727 complaints, the bankruptcy court correctly notes that nonmoving creditors have the right at any time to join in a § 727 action, and are invited to join in the action if the original moving party is inclined to dismiss the § 727 complaint. See Fed. R. Bankr.P. 7041 and 7024; but cf. Bank of India v. Chalasani (In re Chalasani), 92 F.3d 1300 (2d Cir.1996).
[2] More precisely, the court stated that it would be an "abuse of discretion" to deny International the extended time because the § 341 meeting had not yet concluded. See Appendix at 137, 140.
[3] To the extent, if any, that the recent case of Capital Communications Federal Credit Union v. Boodrow (In re Boodrow), 126 F.3d 43 (2d Cir. 1997), might suggest a different standard it seems clear that the view of the prior panels is controlling. See Mediators, Inc. v. Manney (In re Mediators, Inc.), 105 F.3d 822, 828 (2d Cir.1997); see United States v. Coffin, 76 F.3d 494, 496 n. 1 (2d Cir.1996); Jones v. Coughlin, 45 F.3d 677, 679 (2d Cir.1995); Samuels v. Mann, 13 F.3d 522, 526 (2d Cir.1993), cert. denied, 513 U.S. 849, 115 S.Ct. 145, 130 L.Ed.2d 85 (1994); Wisdom v. Intrepid Sea-Air Space Museum, 993 F.2d 5, 7 (2d Cir.1993); United States v. Monaco, 23 F.3d 793, 803 (3d Cir.1994); NLRB v. Industrial Turnaround Corp., 115 F.3d 248, 254 (4th Cir. 1997); United States v. Miro, 29 F.3d 194, 199 n. 4 (5th Cir.1994); Thomson v. Harmony, 65 F.3d 1314, 1320 (6th Cir.1995), cert. denied, ___ U.S. ___, 116 S.Ct. 1321, 134 L.Ed.2d 473 (1996); United States v. Wilson, 37 F.3d 1342, 1343 (8th Cir.1994); Local Union 48 Sheet Metal Workers v. S.L. Pappas & Co., 106 F.3d 970, 975 (11th Cir.1997); see also United States v. Hardesty, 977 F.2d 1347, 1348 (9th Cir.1992), cert. denied, 507 U.S. 978, 113 S.Ct. 1429, 122 L.Ed.2d 797 (1993).
[4] In Peachtree Lane Assoc. v. Granader (In re Peachtree Lane Assoc.), 188 B.R. 815 (N.D.Ill. 1995), the District Court dealing with § 363(m) stay provisions found that "to apply the rule mechanically where an appellant has sought a stay but was denied relief would provide a mechanism by which bankruptcy courts could effectively preclude appellate review." Id. at 829. That court declined to dismiss the appeal as moot even where a stay was not granted because a diligent effort to obtain a stay was made and because events had not taken place which would prevent the rendering of effective relief to the appellant. Id.
[5] Absent a stay pending appeal, the prevailing party is entitled to treat the order of the bankruptcy court as final. 10 Collier on Bankruptcy ¶ 8005.02 (Lawrence P. King ed.1996); Rochman v. Northeast Utilities Serv. Group (In re Public Serv. Co.), 963 F.2d 469, 473 n. 10 (1st Cir.), cert. denied, 506 U.S. 908, 113 S.Ct. 304, 121 L.Ed.2d 226 (1992); Hoese Corp. v. Vetter Corp. (In re Vetter Corp.), 724 F.2d 52, 55 n. 5 (7th Cir.1983); Bleaufontaine, Inc. v. Roland Int'l (In re Bleaufontaine, Inc.), 634 F.2d 1383, 1390 n. 14 (5th Cir.1981); see also In re Highway Truck Drivers, 888 F.2d 293, 297-98 (3d Cir.1989).
[6] See footnote 7 to the effect that the Rule 4007 time limitation is not jurisdictional; that does not foreclose argument, however, as to whether an interim extension is or is not appropriate in any given case.
[7] We believe that the authority existed for same, because the motion was timely filed, i.e., the request was timely "made." See Fed. R. Bankr.P. 4004(b) and 4007(c). Furthermore, the Second Circuit has held that the running of the Rule 4007 time period does not remove jurisdiction from the bankruptcy court to extend the time to file complaints. See European American Bank v. Benedict (In re Benedict), 90 F.3d 50, 54 (2d Cir.1996). But see e.g., Dollinger v. Poskanzer (In re Poskanzer), 146 B.R. 125 (D.N.J.1992) (Rule 4007(c) time limits are jurisdictional); First Deposit Nat'l Bank v. Glover (In re Glover), 212 B.R. 860 (Bankr.S.D.Ohio 1997) (same); Brown v. Barley (In re Barley), 130 B.R. 66 (Bankr. N.D.Ind.1991) (same).